UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | |
| | * | Criminal Action No. 15-10396-ADB |
| JUAN WALKES, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Currently pending before the Court is Defendant Juan Walkes's Motion to Dismiss [ECF No. 51] the Indictment charging him with illegal re-entry as a deported alien under 8 U.S.C. §§ 1326(a), (b)(2) and 6 U.S.C. §§ 202(3)–(4), 557 [ECF No. 1]. For the reasons stated below, the motion is GRANTED.

I.   BACKGROUND

On December 15, 2016, the Court held a hearing on Walkes's Motion to Dismiss [ECF No. 51]. See [ECF No. 61]. At the hearing, Walkes testified and the Court admitted as exhibits the documents attached to Walkes's Motion to Dismiss. See [ECF No. 51, Exs. A–K]. The following facts are derived from the December 15, 2016 hearing, the exhibits admitted at that hearing, and the factual record in this case.

Walkes was born in the Bahamas in 1971, but emigrated to the United States in 1976. He grew up in Cambridge, Massachusetts, and attended Cambridge Rindge and Latin High School. He is married with two children, a 12-year-old daughter and a 20-year-old son. He is also the stepfather to his wife's two daughters from a previous relationship.

1

On April 23, 1999, Walkes pleaded guilty to distribution and possession with intent to distribute a controlled substance and corresponding school zone charge in Dorchester District Court. [ECF No. 51, Ex. D]. He received sentences that ran concurrently: one day in the House of Corrections for the drug charge and two years for the school zone charge. Id.

On August 24, 1999, while incarcerated, Walkes had a meeting with an officer from the Immigration and Naturalization Services (INS). At the meeting, he received a Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent"). See [ECF No. 51, Ex. B]. Walkes testified that the immigration official told him he had no rights and was not allowed to see a judge. Further, Walkes testified that he was never provided a list of lawyers that might provide him with free legal counsel. He also claimed that he did not receive a copy of the Notice of Intent to take with him when he left the meeting. Walkes received an Acknowledgement form, on which he could indicate whether he was contesting his deportability. See [ECF No. 51, Ex. C]. The Acknowledgement form also indicates that "Alien refused to acknowledge receipt of this document [the Notice of Intent]." Id. Walkes filled out the Acknowledgment form on August 30, 1999, indicating that he wanted to contest the deportation by checking the box requesting further review. Although the government contested Walkes's testimony concerning his interactions with INS through cross-examination, it did not put on a witness to offer an alternate version, which the Court attributes to the passage of time and the difficulty of locating the appropriate witness.

On September 3, 1999, Walkes was served with a Final Administrative Removal Order ("Final Order"). See [ECF No. 51, Ex. A]. The section of the Final Order indicating whether the respondent reserved a petition for review or waived a petition for review is blank. Walkes stated that the immigration official never explained his right to petition for review or discussed that particular section with him. He avers that he would have petitioned for review if he had known

that he had a right to do so. The Final Order contains no information explaining that Walkes had a right to petition for review or how he might file such a petition.

On or about March 8, 2001, Walkes was deported. [ECF No. 1]. He re-entered the United States at some point thereafter. On December 4, 2015, he was arrested by ICE officers based on an anonymous tip. He was arraigned in this Court on the charge of unlawful re-entry. [ECF No. 6]. On May 6, 2016, Walkes's guilty pleas from April 23, 1999 were vacated after the Dorchester Court allowed Walkes's motions to vacate pursuant to Padilla v. Kentucky, 559 U.S. 356 (2010). See [ECF No. 51, Ex. G]. On August 2, 2016, all the convictions were dismissed at the request of the Commonwealth. See [ECF No. 51, Exs. D, E]. On August 17, 2016, Walkes submitted a request to ICE to reconsider and reopen the 1999 removal proceedings, which ICE denied as not cognizable and untimely filed. See [ECF No. 51, Ex. I].

On October 28, 2016, Walkes filed a Motion to Dismiss the Indictment [ECF No. 51], which the government opposed [ECF No. 58].

## II. LEGAL STANDARD

"It is a crime for an alien to re-enter the country after he has been deported, unless he has the express permission of the Attorney General of the United States (or unless such permission is unnecessary in his case for other reasons)." United States v. DeLeon, 444 F.3d 41, 44 (1st Cir. 2006) (citing 8 U.S.C. § 1326(a)). "The elements of illegal reentry are that the defendant '(1) is an alien, (2) was previously deported, and (3) thereafter entered, or attempted to enter, the United States without permission.'" United States v. Vargas, 277 F. App'x 11, 11 (1st Cir. 2008) (quoting United States v. Contreras Palacios, 492 F.3d 39, 42 (1st Cir.2007)). 8 U.S.C. § 1326(d) provides an exception "for aliens who can prove that the original deportation order was based on administrative proceedings which were fundamentally unfair." DeLeon, 444 F.3d at 44. Under §

1326(d), "an alien may not challenge the validity of the deportation order . . . unless . . . [he] demonstrates that—"

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

"[A] defendant must satisfy all [three of the requirements] to successfully attack his removal order." United States v. Luna, 436 F.3d 312, 317 (1st Cir. 2006).

## III. DISCUSSION

### a. Section 1326(d)(1) – exhaustion requirement

Walkes argues that the Court should excuse the exhaustion requirement because the fundamental unfairness involved in his case deprived Walkes of his ability to seek administrative remedies. Specifically, Walkes claims he was told that he could not see a judge, that he was not provided with a list of free legal services, and that he did not understand that he could petition for review of the deportation order. The government argues that Walkes failed to exhaust his administrative remedies by failing to petition for review and that he had sufficient notice of his right to seek review.

The First Circuit has instructed district courts to "ordinarily . . . address the initial test of exhaustion of administrative remedies before going on to the other two tests." DeLeon, 444 F.3d at 45. A failure to appeal an expedited immigration decision would generally bar a collateral attack on a deportation order. Cf. Id. at 50 n.7 ("In many cases, if there has been no such exhaustion by taking an appeal to the Board of Immigration Appeals, a court would not consider the petitioner's claims."). The First Circuit has not determined whether there is an exception to the statutory exhaustion requirement based on the types of due process concerns raised by

Walkes here. See, e.g., United States v. Soto-Mateo, 799 F.3d 117, 121 (1st Cir. 2015), cert. denied, 136 S. Ct. 1236 (2016). Other circuits have found that there is an exception where the waiver of the right to an administrative appeal "did not comport with due process." See United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001); accord Richardson v. United States, 558 F.3d 216, 219–20 (3d Cir. 2009); United States v. Sosa, 387 F.3d 131, 136 (2d Cir. 2004); United States v. Martinez-Rocha, 337 F.3d 566, 569 (6th Cir. 2003). District courts in this Circuit have agreed. See, e.g., United States v. Boliero, 923 F. Supp. 2d 319, 326 (D. Mass. 2013). Assuming such an exception exists, the First Circuit has indicated that "a defendant bears the burden of proving his eligibility for any exception to the statutory requirements." Soto-Mateo, 799 F.3d at 121.

The Court finds the reasoning of the four circuit courts persuasive and therefore concludes that § 1326(d)(1) does not bar a collateral attack when the failure to exhaust administrative remedies is a result of a waiver that was not voluntary, intelligent, or knowing. The principle is drawn from the Supreme Court's holding in United States v. Mendoza-Lopez, 481 U.S. 828, 840 (1987), where it held that "[b]ecause the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding." See, e.g., Richardson, 558 F.3d at 219–220 ("An alien validly waives his rights associated with a deportation proceeding only if he does so voluntarily and intelligently." (citing Mendoza-Lopez, 481 U.S. at 840)); Sosa, 387 F.3d at 137 ("It would offend the principles enunciated in Mendoza-Lopez not to excuse the administrative exhaustion requirement under such circumstances."). Accordingly, "[a] failure to exhaust administrative remedies bars collateral review of a deportation proceeding under Section 1326(d)(1), therefore, only where an alien's waiver of administrative review was knowing and intelligent." Sosa, 387 F.3d at 136; see

5

also Soto-Mateo, 799 F.3d at 124 (holding that appellant's waiver of appeal was "voluntary, knowing, and intelligent," and thereby avoiding determining whether invalid waiver was exception to exhaustion requirement).

In this case, the Court concludes that Walkes's waiver of the right to petition for review was not intelligent or knowing. The Court looks to the entirety of the circumstances under which Walkes's alleged waiver was made. Walkes testified that the immigration official never explained Walkes's right to appeal, never provided him with a list of free legal services, and failed to provide him with a copy of the Notice of Intent to review after the meeting. Furthermore, the immigration official did not explain the relevant sections of the Notice of Intent or Final Order. Rather, the immigration official told Walkes that he had no rights and could not see a judge. The Final Order did not on its own sufficiently inform Walkes of his right to petition for review—it included no deadline, no mention that he had a right to petition for review, and no mention that he could seek the counsel of a lawyer from a list of free legal services. There is no evidence that he was re-served the Notice of Intent that did include such information when he finally received the Final Order. Absent an explanation in the Final Order itself, it is reasonable to conclude that a recipient of a Notice of Intent under these circumstances could have inferred that the "rights and responsibilities" only pertained to the Notice of Intent. Moreover, the Notice of Intent did not explain in what court Walkes had to file the petition for review or under what statutory provision he might find that information. This is especially confusing given the instructions on the Acknowledgment form that Walkes had to contest his deportability by mailing a form to INS.[1]

---

[1] The Court finds the fact that Walkes's was not provided with a list of free available legal services to also present a due process problem. In the expedited removal context, § 1228 provides that "the alien shall have the privilege of being represented (at no expense to the

Based in part on the fact that Walkes did contest his deportability when information was adequately provided to him and conceiving of no reason why he would not have contested it if he knew that he had the right to do so, the Court credits his testimony that he was not aware that he had a right to further petition for review following the Final Order. The fact that he was informed by the immigration official that he did not have a right to see a judge and had no rights because he was convicted of an aggravated felony contributes to the insufficiency of the notice provided under these circumstances. The failure of the immigration official to check either box on the Final Order—that respondent is waiving or reserving his right to petition for review—supports Walkes's position that he was never informed of his right to petition.[2] Thus, the Court finds that Walkes's waiver of his right to appeal the Final Order was not knowing, intelligent, or voluntary, and accordingly, the Court excuses his failure to exhaust administrative remedies.

### b. Section 1326(d)(2) – deprivation of opportunity for judicial review

---

government) by such counsel, authorized to practice in such proceedings, as the alien shall choose." 8 U.S.C. § 1228(b)(4)(B). The implementing regulation requires that he be provided with "a list of available free legal service programs . . . located within the district or sector where the Notice of Intent is issued." 8 C.F.R. § 238.1(b)(2)(iv). A failure to comply with agency regulations results in a due process violation. See Leslie v. Att'y Gen. of the United States, 611 F.3d 171, 182 (3d Cir. 2010); see also United States v. Garcia-Gonzalez, 791 F.3d 1175, 1179 (9th Cir. 2015), cert. denied, 136 S. Ct. 862 (2016) ("The government does not contest the assertion that Garcia's 2012 expedited removal proceeding failed to comply with the applicable regulation. See 8 C.F.R. § 1235.3(b)(2)(i). Thus, like the district court, we assume Garcia has established a due process violation and move on to consider the question of prejudice.").

[2] Furthermore, the Court notes that the Notice of Intent explained that Walkes had to file a petition for review within 14 days. This deadline seems to be drawn from § 1228(b)(3), which states that "[t]he Attorney General may not execute any order described in paragraph (1) until 14 calendar days have passed from the date that such order was issued, unless waived by the alien, in order that the alien has an opportunity to apply for judicial review under section 1252 of this title." 8 U.S.C. § 1228(b)(3). Section 1252, however, provides that "[t]he petition for review must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). It is not immediately clear to this Court which deadline takes precedence, and would likely be unclear to any defendant.

In his expedited removal proceeding, Walkes's case was never subject to judicial review. Given the underlying reason for his failure to exhaust administrative remedies as discussed above, the Court holds that Walkes was deprived of the opportunity for judicial review. See Boliero, 923 F. Supp. 2d at 331 ("Having ruled that the defendant was prevented from exhausting administrative remedies by due process violations, these same violations have deprived h[im] of the opportunity for judicial review.").

   c. **Section 1326(d)(3) – fundamental unfairness**

To show that "the entry of the order was fundamentally unfair," Walkes must show both procedural error and prejudice. Luna, 436 F.3d at 319. "The circuit courts disagree on whether a procedural error must result in a deprivation of a liberty or property interest . . . ." Boliero, 923 F. Supp. 2d 319 at 332. The First Circuit has not elaborated on what constitutes procedural error, and has often reached a decision based solely on the prejudice prong. See e.g., Soto-Mateo, 799 F.3d at 124. Prejudice occurs when there is "a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." United States v. Loaisiga, 104 F.3d. 484, 487 (1st Cir. 1997). The First Circuit has noted that "[t]here may be some cases where the agency's violation of a petitioner's rights was 'so flagrant, and the difficulty of proving prejudice so great' that prejudice may be presumed." Luna, 436 F.3d at 321 n.14 (quoting Loaisiga, 104 F.3d at 488); see also United States v. Lepore, 304 F. Supp. 2d 183, 196 (D. Mass. 2004) ("Occasionally, an error might be sufficiently fundamental that prejudice can be presumed.").

The Court does not attempt to elucidate the precise standard for procedural error here; however, the Supreme Court has held that a deprivation of the right to seek judicial review of the deportation order in an administrative proceeding paves the way for a collateral attack. See

8

Mendoza-Lopez, 481 U.S. at 839–40 ("Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding. The Government may not, therefore, rely on those orders as reliable proof of an element of a criminal offense."). While Mendoza-Lopez was decided prior to the enactment of § 1326(d), § 1326(d) largely codified the decision. Luna, 436 F.3d at 317. Thus, a deprivation of a right to seek judicial review during the deportation proceeding permits a collateral challenge, and therefore must qualify as procedural error for § 1326(d) purposes. See id. at 319 (recognizing that Mendoza-Lopez identified "an [Immigration Judge's] failure to adequately explain the availability of relief, resulting in an uninformed waiver of the right to appeal" was "procedural error" resulting in deprivation of judicial review).

Given the specific facts of this case, the Court finds that prejudice can be presumed. The prejudice here is distinct from cases where courts analyzed prejudice involving the possibility of only discretionary relief. See, e.g., DeLeon, 444 F.3d at 41; see also Luna, 436 F.3d at 321 n.14 (noting that "no court has applied that concept [presumed prejudice] to the context of the failure to adjudicate an application for § 212(c) relief"). Proving prejudice in this case by establishing that Walkes would have received some sort of relief had he appealed the Final Order is difficult and would be highly speculative because of the passage of time, the lack of a fully developed record, the circumstances of an expedited removal proceeding following a criminal conviction, and the fact that the conviction in this case was vacated on constitutional grounds. Unlike many of the cases cited by the parties that involved the possibility of discretionary relief from deportation and concerned hearings before an Immigration Judge, it is unclear, given the limitations of hindsight and the record before the Court, what the basis of Walkes's appeal would have been or what the relief might have been. Furthermore, in this case, the deprivation of a right

9

to appeal in an expedited removal proceeding is sufficiently flagrant to justify a presumption of prejudice. Finally, the fact that the underlying conviction was ultimately vacated on constitutional grounds supports a presumption of prejudice in this case.[3]

Accordingly, Walkes has met all the requirements of § 1326(d).

### d. Due Process Concerns

Lastly, Walkes argues that, based on the reasoning in Boliero, 923 F. Supp. 2d at 334, and regardless of the 8 U.S.C. § 1326 analysis, the removal order is void ab initio because the underlying guilty plea has been vacated on constitutional grounds. In Boliero, the court explained that "were it not for that conviction, none of the subsequent events such as the imposition of the deportation order, the removal, and the present indictment would have occurred," and concluded that "[g]iven that the 1992 deportation order, Ms. Boliero's actual removal, and this prosecution all stem from a constitutionally flawed and now-vacated conviction, common sense dictates the dismissal of this indictment." Id. at 334.

Although the First Circuit has expressly rejected the argument that a deportation order based on a criminal conviction that has since been vacated is a violation of due process if the vacatur occurred following the removal proceedings, Pena-Muriel v. Gonzales, 489 F.3d 438, 443 (1st Cir. 2007), Boliero distinguished Pena-Muriel on two grounds. First, the Court found that Pena-Muriel did not hold "that a vacatur of an underlying criminal conviction should have no effect on a deportation order," but instead recognized that even though "a vacatur may be an

---

[3] The government rebuts Walkes's prejudice argument by pointing to Walkes's criminal history. First, Walkes's criminal history was never put into the factual record in this case. Second, it is unclear whether the Court's prejudice analysis could rely on convictions that were not listed on the Notice of Intent in this particular case. See United States v. Pulido-Estrada, 624 F. App'x 526, 527–28 (9th Cir. 2015) ("Although a conviction that was not alleged in the Notice to Appear may be used to deny an alien discretionary relief from removal, it may not serve as the basis for the underlying order of removal itself.").

10

'appropriate' basis for reopening a deportation order [it] does not establish a due process right to such reopening after one has departed the country." Boliero, 923 F. Supp. 2d at 334 (quoting De Faria v. INS, 13 F.3d 422, 423 (1st Cir. 1993) (per curiam)). Second, the Court noted that Pena-Muriel dealt with the balance between finality and due process in the context of administrative, not criminal, proceedings, and that "[t]he due process protections for criminal defendants must be more stringent than protections in administrative proceedings." Id. Thus, the court concluded that "a criminal conviction for illegal reentry would be a continuing consequence of a conviction vacated ab initio and a violation of due process." Id. at 335 n.19.

This Court agrees, adopts the reasoning in Boliero, and notes the following. The Pena-Muriel Court was concerned with finality in the context of deportation orders, stating that "[d]ue process does not require continuous opportunities to attack executed removal orders years beyond an alien's departure from the country. Indeed, there is a strong public interest in bringing finality to the deportation process." Pena-Muriel, 489 F.3d at 443. In this case, Walkes does not contest the finality of a deportation order, but rather a subsequent indictment charging him with illegal re-entry following a criminal conviction. Although the indictment depends in part on the deportation order, it implicitly relies equally on the fact of the criminal conviction that formed the basis for the deportation order. Thus, dismissing the indictment in this case does not run afoul of the concerns raised in Pena-Muriel as the decision under attack is not the decision to deport, but rather the decision to indict following Walkes's return to the United States.

As was so well stated in Boliero, "[t]his Court can find no way around the conclusion that any prosecution of [the defendant] today for illegal reentry would continue to impose the consequences of that unconstitutional conviction. 'The least we can do is to wipe out the record of conviction and its consequences.' The sound structure needed for an irreproachable conviction

11

cannot be built upon so infirm a foundation." Boliero, 923 F. Supp. 2d at 335–36 (internal citation omitted) (quoting United States v. Morgan, 222 F.2d 673, 675 (2d Cir.1955)). Here, as in Boliero, the conviction underlying the deportation order was vacated by a state court on Padilla grounds following Walkes's deportation. Because Walkes did not have a meaningful right to be heard on appeal in connection with the administrative proceedings that resulted in his deportation and given that the underlying conviction itself was eventually vacated on constitutional grounds, a subsequent criminal prosecution for illegal re-entry based on the vacated conviction, at least under the facts of this case, cannot proceed and the Indictment must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Walkes's Motion to Dismiss [ECF No. 51].

**SO ORDERED.**

Dated: January 25, 2017

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
UNITED STATES DISTRICT JUDGE